No. of Pages: 10

2009-26417
FILED
October 02, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0002109197

JEFFER, MANGELS, BUTLER & MARMARO LLP
ROBERT B. KAPLAN (Bar. No. 76950)
NICOLAS DE LANCIE (Bar. No. 84934)
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3824
Telephone: (415) 398-8080
Facsimile: (415) 398-5584
e-mail: rbk@jmbm.com
e-mail: nde@jmbm.com

Attorneys for Secured Creditor
PACIFIC COAST BANKER'S BANK, as Agent

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>SUMMERFIELD APARTMENTS IN DIXON, LLC,<br><br>    Debtor. | Case No. 09-26417 CMK<br><br>Chapter 11<br><br>DCN: WFH-5<br><br>Hearing:<br><br>September 22, 2009<br>10:30 a.m.<br>Honorable Christopher M. Klein |

**INTERIM ORDER AUTHORIZING USE OF**
**CASH COLLATERAL AND ADEQUATE PROTECTION**

   SUMMERFIELD APARTMENTS IN DIXON, LLC (the **"Debtor"**), debtor and debtor in possession in the above-captioned Chapter 11 case (the **"Case"**); BANK OF SACRAMENTO (**"BoS"**); and PACIFIC COAST BANKERS' BANK (**"PCBB"**; BoS and PCBB, together, the **"Banks"**; and the Debtor and the Banks, collectively, the **"Parties"**) have stipulated to entry of this order (this **"Interim Order"**) on the Debtor's Motion for Use of Cash Collateral filed in the Case on August 12, 2009 [Docket No. 83], and, accordingly, based on the

RECEIVED
September 24, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002109197

4v1 68712 0005    – 1 –    Interim Order Authorizing Use of Cash
Collateral and Adequate Protection

Motion, the papers filed in support thereof, and the arguments of counsel made and the other matters adduced at the various hearings on the Motion, and good cause appearing—

IT IS HEREBY ORDERED THAT—

1. <u>Motion Granted</u>. The Motion is hereby GRANTED on an interim basis, and any objections to the Motion are hereby OVERRULED on an interim basis, through and including the earlier of (i) the end of the period covered by the Budget (defined below) (*i.e.*, January 31, 2010); and (ii) the effective date of a plan confirmed in the Case (the pearlier of those two dates, the **"Cash Collateral Use Termination Date"**).

2. <u>Authorization for Use of Cash Collateral</u>. Pursuant to the Sections 361, 363(c), and 363(e) of the Bankruptcy Code[*], the Debtor is hereby authorized to use and disburse rents of the Debtor's real property located at 400–480 Ellesmere Drive, Dixon, California (the **"Real Property"**) (those rents, whether advance or current, security deposits, or other amounts paid under or with respect to any use or occupancy of the Real Property, whether heretofore or hereafter, and whether held by or for the benefit of the Debtor, including by a custodian or property manager, in whatever form received or held, and any proceeds thereof, collectively, the **"Rents"** or the **"Cash Collateral"**), in the ordinary course of the Debtor's business in accordance the provisions of this Interim Order to pay (but only to pay) the ordinary, reasonable, and actual costs and expenses of operating the Debtor's real property located at 400–480 Ellesmere Drive, Dixon, California (the **"Real Property"**), and renovating certain units of the Real Property (those expenses, the **"Permitted Expenses"**), during the period from October 1, 2009, through and including the Cash Collateral Use Termination Date (that period, the **"Budget Period"**), to the extent Permitted Expenses are set forth in the budget attached hereto as **Exhibit A** (the **"Budget"**) (provided, however, that (i) the Debtor may reallocate (A) expenses for various line items in a month in the categories Renting Expenses, Administrative Expenses, Utility Expenses, Operating Expenses, Maintenance Expenses, and

---

[*] All statutory references herein are to the Bankruptcy Code (Title 11 of the United States Code). All terms defined and other words of art used in the Bankruptcy Code have the same meanings when used in this Interim Order as they have in the Bankruptcy Code. The rules of construction set out in Bankruptcy Code Section 102 apply to this Interim Order

Taxes & Insurance from other line items in those categories for that month; and (B) costs for various line items in a month in the Construction Costs category to other line items in that category for that month, and from one month of the Budget to an earlier month of the Budget; and (ii) the Convenience Class in the category Financial Expenses is deleted from the Budget), as and when those Permitted Expenses become due and payable, subject, however, to Section 9 (Default Procedures) below.

3. <u>Debtor in Possession Accounts</u>. The Debtor shall keep (or cause the manager for the Real Property, Natoma Company (the **"Property Manager"**), to keep) all Cash Collateral in one or more segregated debtor in possession accounts or property manager trust accounts for the benefit of the Debtor (all of those accounts, collectively, the **"Accounts"**) with authorized depositories as identified by the Office of the United States Trustee in the Eastern District of California (the **"United States Trustee"**).

4. <u>Adequate Protection</u>. In order to provide adequate protection to the Banks for the Debtor's use of Cash Collateral pursuant to this Interim Order—

(a) <u>Replacement Lien</u>. The Debtor hereby grants each Bank a lien (each, a **"Replacement Lien"**) on all rents of the Real Property acquired by the Debtor on or after April 6, 2009 (the **"Petition Date"**), to the extent the same are not, as to that Bank, subject to the security interests of that Bank pursuant to Bankruptcy Code Section 552(b)(2), in order to secure that Bank's claims against the Debtor to the extent that the Debtor's use of Cash Collateral on or after the Petition Date results in a diminution of the value of collateral in which that Bank holds a valid, perfected, and enforceable security interest as of the Petition Date; provided, however that each Replacement Lien shall have the same validity, perfection, relative priority, and enforceability as those prior security interests; and provided further, that the Replacement Lien shall be subordinate to the allowed and approved fees and costs of the trustee, if any, in any succeeding Chapter 7 case. The Replacement Liens are valid, perfected, and enforceable as of the Petition Date without any further action by the Debtor or either Bank and without the execution, filing, or recording of any financing statement, security agreement, or other document. The Replacement Liens will remain in full force and effect notwithstanding

any subsequent conversion or dismissal of the Case. For the avoidance of doubt, the Replacement Liens do not extend to any actions, causes, of action, or claims for relief of the estate of the Debtor in the Case (the **"Estate"**) that arise under Chapter 5 of the Bankruptcy Code or to any claims of the Debtor against the Banks or either of them.

(b) <u>Reporting</u>. The Debtor shall deliver (or cause the Property Manager to deliver) to the Banks the following reports, documents, copies, and other information:

(i) On Monday of each calendar week (or on the next business day if that Monday is not a business day), a copy of the Weekly Report of the leases and lease reservations and deposits of the Real Property as of that Monday given by the Property Manager to the Debtor;

(ii) As soon as received from the Property Manager, but not later than the 15th day of each calendar month (or on the next business day if that 15th day is not a business day), a copy of the Budget to Actual Variance Report for the prior calendar month and year to date given by the Property Manager to the Debtor;

(iii) As soon as received from the Property Manager, a copy of each other report on the status or condition of, or event or circumstance occurring at, the Real Property issued or given by the Property Manager to the Debtor;

(iv) Monthly, as soon as received from the depositary thereof, a copy of the account statement rendered for each Account for the preceding monthly period; and

(v) If requested by either Bank, copies of (i) canceled checks and other items drawn on or debited against each Account; (ii) invoices, statements, and other reasonably requested information regarding expenditures of Cash Collateral; and (iii) evidence of insurance of the Real Property as required under the existing deed of trust and other agreements between BoS and the Debtor with respect to the respective loan that is the subject of the Proof of Claim filed by each Bank in the Case on August 11, 2009 [Claim Nos. 9 and 10] (the loan documents for each of those loans, collectively, the **"Loan Documents"**).

(c) <u>Property Inspection</u>. The Debtor shall permit the Banks and their respective agents access to the Real Property to inspect the same (non-invasively only),

consistent with the rights of tenants in possession, during usual business hours on reasonable notice (at least two business days), but not more frequently than once in each calendar month.

    (d) <u>Property Matters</u>. The Debtor shall (i) keep the Real Property insured as required by the Loan Documents; and (ii) manage the Real Property (or cause it to be managed) in accordance with management practices and procedures as are customary for the management of multi-family residential properties in greater Sacramento, California, area.

    (e) <u>No Surcharges While Cash Collateral Use Permitted</u>. At no time during the Budget Period may the surcharge provisions of Bankruptcy Code Section 506(c) be imposed on or against either Bank or any of the Real Property. By its consent to entry of this Interim Order, the Debtor is deemed to waive any right, and agrees not, to seek any such surcharge during the Budget Period or for work or charges occurring or incurred during the Budget Period.

   5. <u>Amendment or Modification of Budget</u>. The Debtor, with the consent of the Banks' in their discretion, is authorized to execute and deliver amendments to or modifications of the Budget without further approval of the Court; provided, however, that those amendments or modifications may only be made with prior notice to the any committee appointed in the Case and the United States Trustee.

   6. <u>No Waiver</u>. Except as expressly contemplated herein with respect to the use of Cash Collateral, this Interim Order does not constitute a waiver by any of the Parties of any of their rights under the Loan Documents, the Bankruptcy Code, or other applicable law, including, (i) as to the Debtor, any of its rights with respect to (A) the use of Cash Collateral; (B) adequate protection of the interests of the Banks in the Real Property within the meaning of Bankruptcy Code Sections 362(d) or 363(e), or any other provision thereof those sections; (C) any amounts claimed to be due from the Debtor by either Bank or the validity, priority, or extent of any liens claimed by either Bank; or (D) any claims it may have against either of the Banks; and (ii) as to the Banks, the right later to assert (A) that, notwithstanding the terms and conditions of this Interim Order, their respective interests in the Real Property lack adequate protection within the meaning of those sections or other provision; or (B) a claim under

PRINTED ON RECYCLED PAPER

JMBM Jeffer Mangels Butler & Marmaro LLP

Bankruptcy Code Section 507(b). No direct or implied finding of fact in this Interim Order will bind the Estate or other parties in interest in the Case. No delay on the part of any Party in exercising any right or remedy under this Interim Order, the Bankruptcy Code, or the Bankruptcy Rules (national or local) will preclude any other or further exercise of any of those rights or remedies. Except as expressly provided in this Interim Order, no Party is to be deemed to have suspended or waived any of its respective rights or remedies unless that suspension or waiver is in writing, signed by a duly authorized officer thereof, and directed to the others.

7. <u>Notice</u>. Any notice, report, document, copy, or other information required or permitted to be given or provided hereunder to any Party is to be given or provided by hand delivery, facsimile, or email (in the latter two instances, with a copy to follow by United States Postal Service first class mail, postage prepaid), to the respective counsel of record in the Case for that Party.

8. <u>Events of Default</u>. The occurrence of any one or more of the following events shall constitute an **"Event of Default"** under this Interim Order: (i) the Debtor fails to perform any of its obligations in accordance with the terms hereof or otherwise defaults hereunder or breaches any provision hereof; (ii) a trustee is appointed or elected, or an examiner with the power to operate the Debtor's business is appointed, in the Case; (iii) the Case is converted to a case under Chapter 7 or is dismissed; (iv) this Interim Order is reversed, vacated, stayed, amended, or supplemented without the consent of the Banks; or (v) any certificate, report, rent roll, expense statement, other financial statement, or other document delivered to the Banks pursuant hereto proves to have been false or misleading in any material respect as of the time when made or given.

9. <u>Default Procedures</u>. If any Event or Events of Default occurs, either Bank may give written notice thereof to the Debtor giving, if the same are all susceptible of being cured, the Debtor five (5) business days to cure all those Events of Default. If all those Events of Default are susceptible of being cured and the Debtor fails to cure all of them within that five (5) business day period, the Debtor's rights to use Cash Collateral will immediately cease five (5) business days from the date of delivery of that notice. If any of those Events of Default are

SF\912094v1 68712 0005 – 6 – Interim Order Authorizing Use of Cash Collateral and Adequate Protection

not susceptible of being cured, the Debtor's right to use Cash Collateral will cease immediately on delivery of that notice. Notwithstanding the occurrence of a Event of Default under this Interim Order, the Debtor will be permitted to notice an expedited hearing in this Court so that the Court can determine whether (i) any asserted event of default has occurred; or (ii) to authorize further use of Cash Collateral, and the Banks shall cooperate with the Debtor in the setting of that hearing.

10. <u>Findings of Fact and Conclusions of Law</u>. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

11. <u>Binding Effect</u>. This Interim Order shall be binding in all respects upon the Debtor, the Banks, and any respective successors thereto.

Approved by:

WILKE, FLEURY, HOFFELT, GOULD &
BIRNEY, LLP

By: ___/s/ Daniel L. Egan___
      Daniel L. Egan, Esq.

Attorneys for Debtor SUMMERFIELD
APARTMENTS IN DIXON, LLC

BOUTIN GIBSON DI GIUSTO
HODELL INC.

By: ___/s/ Lisa L. Shotwell___
      Lisa L. Shotwell, Esq.

Attorneys for Secured Creditor BANK OF
SACRAMENTO

Dated: October 02, 2009

United States Bankruptcy Judge

MEADOWOOD VILLAGE
Dixon, California
LEASE UP BUDGET 2009-2012

# EXHIBIT A

| (revised 5-19-09) | 2009 JUN | 2009 JUL | 2009 AUG | 2009 SEP | 2009 OCT | 2009 NOV | 2009 DEC | 2010 JAN |
|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | |
| *GROSS SCHEDULED RENTS | 5,035 | 12,290 | 20,540 | 32,390 | 43,345 | 52,350 | 56,290 | 60,230 |
| **Rental Income** | | | | | | | | |
| 5120 Rental Income | 5,035 | 12,290 | 20,540 | 32,390 | 43,345 | 52,350 | 56,290 | 60,230 |
| 5165 Promotional Rent | - | - | - | - | - | - | - | - |
| 5125 Rent-Employee Unit | 2,150 | 2,150 | 2,150 | 2,150 | 2,150 | 2,150 | 2,150 | 2,150 |
| Total Rental Income | 7,185 | 14,440 | 22,690 | 34,540 | 45,495 | 54,500 | 58,440 | 62,380 |
| **Financial Income** | | | | | | | | |
| 5410 Interest Income | - | - | - | - | - | - | - | - |
| 5490 Misc. Financial Income | - | - | - | - | - | - | - | - |
| Total Financial Income | - | - | - | - | - | - | - | - |
| **Other Income** | | | | | | | | |
| Balance forward | 61,370 | | | | | | | |
| Homeowners Maint. Fees | 307 | 307 | 307 | 307 | 307 | 307 | 307 | 307 |
| 5920 NSF & Late Charges | - | - | - | - | - | - | - | - |
| 5921 Credit Check Fees | 200 | 225 | 250 | 300 | 300 | 300 | 175 | 125 |
| 5910 Laundry & Vending | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 |
| 5175 Bad Debt Collected | - | - | - | - | - | - | - | - |
| 5190 Misc. Income | - | - | - | - | - | - | - | - |
| Total Other Income | 62,752 | 1,407 | 1,432 | 1,482 | 1,482 | 1,482 | 1,357 | 1,307 |
| **TOTAL INCOME** | 69,937 | 15,847 | 24,122 | 36,022 | 46,977 | 55,982 | 59,797 | 63,687 |
| **EXPENSES** | | | | | | | | |
| **Renting Expenses** | | | | | | | | |
| 6210 Advertising | 2,100 | 1,500 | 1,200 | 1,100 | 1,000 | 1,000 | 1,000 | 1,000 |
| 6251 Commissions & Referrals | 300 | 500 | 500 | 500 | 500 | 300 | 300 | 300 |
| 6250 Promotional Expense | 2,825 | 500 | 400 | 400 | 400 | 400 | 400 | 400 |
| 6253 Furniture Rental | - | - | - | - | - | - | - | - |
| 6252 Credit Checks | 200 | 225 | 250 | 300 | 300 | 300 | 175 | 125 |
| Total Renting Expense | 5,425 | 2,725 | 2,350 | 2,300 | 2,200 | 2,000 | 1,875 | 1,825 |
| **Administrative Expense** | | | | | | | | |
| 6311 Office Supplies | 650 | 125 | 125 | 125 | 125 | 125 | 125 | 125 |
| 6316 Office Equip./Repair | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 |
| 6320 Management Fees | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| 6330 Resident Manager's Salary | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| 6331 Employee's Apt Allowance | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 |
| 6332 Administrative Fees | 72 | 72 | 72 | 72 | 72 | 72 | 72 | 72 |
| 6340 Legal Expense | - | - | - | - | - | - | - | - |
| 6350 Auditing Fees | - | - | - | - | - | - | - | - |
| 6351 Bookkeeping/Accting Fees | - | - | - | - | - | - | - | - |
| 6360 Telephone | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 |
| 6365 Postage & Messenger | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 |
| 6370 Bad Debts | - | - | - | - | - | - | - | - |
| 6380 Meetings & Training | - | - | - | - | - | - | - | - |
| 6390 Misc. Administration Exp | - | - | - | - | - | - | - | - |
| Total Administrative Expense | 9,787 | 9,262 | 9,262 | 9,262 | 9,262 | 9,262 | 9,262 | 9,262 |
| **Utility Expenses** | | | | | | | | |
| 6458 Electricity - Vacant Units/Emp | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| 6459 Gas - Vacant Units/Emp | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 |
| 6450 Electricity | 835 | 835 | 835 | 835 | 835 | 835 | 835 | 835 |
| 6451 Water | 3,275 | 3,275 | 3,275 | 3,275 | 3,275 | 3,275 | 3,275 | 3,275 |
| 6452 Gas | 255 | 255 | 255 | 255 | 255 | 255 | 255 | 255 |
| 6453 Sewer | 2,650 | 2,650 | 2,650 | 2,650 | 2,650 | 2,650 | 2,650 | 2,650 |
| Total Utility Expense | 7,310 | 7,310 | 7,310 | 7,310 | 7,310 | 7,310 | 7,310 | 7,310 |
| **Operating Expenses** | | | | | | | | |
| 6515 Cleaning Supplies | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| 6445 Automobile Expense | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 |
| 6519 Exterminating Contract | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| 6520 Exterminating Supplies | - | - | - | - | - | - | - | - |
| 6525 Garbage & Trash Removal | 1,663 | 1,663 | 1,663 | 1,663 | 1,663 | 3,325 | 3,325 | 3,325 |
| 6529 Antenna Repair | - | - | - | - | - | - | - | - |
| 6547 Swimming Pool Maintenance | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 |
| 6548 Sweeping Contract | - | - | - | - | - | - | - | - |
| 6480 Cable Television | - | - | - | - | - | - | - | - |
| Total Operating Expense | 2,113 | 2,113 | 2,113 | 2,113 | 2,113 | 3,775 | 3,775 | 3,775 |
| **Maintenance Expenses** | | | | | | | | |
| 6531 Security - Contracted | - | - | - | - | - | - | - | - |
| 6530 Security - Payroll | - | - | - | - | - | - | - | - |

| | (revised 5-19-09) | 2009 JUN | 2009 JUL | 2009 AUG | 2009 SEP | 2009 OCT | 2009 NOV | 2009 DEC | 2010 JAN |
|---|---|---|---|---|---|---|---|---|---|
| 6532 | Fire Extinguishers | - | - | - | - | - | - | - | - |
| 6533 | Locks/Keys | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| 6535 | Grounds - Payroll | - | - | - | - | - | - | - | - |
| 6536 | Grounds - Supplies | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| 6537 | Grounds - Contract | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 |
| 6517 | Cleaning - Contracted | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 |
| 6510 | Cleaning - Payroll | - | - | - | - | - | - | - | - |
| 6540 | Repairs Payroll | 1,000 | 1,000 | 1,500 | 1,900 | 2,650 | 2,650 | 2,650 | 2,650 |
| 6541 | Repairs Material | 50 | 50 | 50 | 150 | 250 | 345 | 345 | 345 |
| 6552 | Carpet Maintenance | - | - | - | - | - | - | 35 | 35 |
| 6546 | Heating Repairs | - | - | - | - | - | 125 | 125 | 125 |
| 6551 | A/C Maintenance | 500 | 500 | 500 | 500 | 500 | - | - | - |
| 6544 | Plumbing Repairs | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| 6543 | Appliance Repairs | - | - | - | - | - | - | - | - |
| 6562 | Drapes Maintenance | - | - | - | - | - | - | - | - |
| 6539 | Paving | - | - | - | - | - | - | - | - |
| 6561 | Painting Supplies | - | - | - | - | - | - | - | - |
| 6558 | Exterior Painting | - | - | - | - | - | - | - | - |
| 6559 | Painting/Wall Covering | - | - | - | - | - | - | - | - |
| 6563 | Roof Repairs & Maint | - | - | - | - | - | - | - | - |
| 6560 | Decorating Payroll | - | - | - | - | - | - | - | - |
| 6542 | Repairs Contract | - | - | - | - | - | - | - | - |
| 6538 | Grounds Improvement | 2,750 | 250 | - | - | - | 400 | - | - |
| 6568 | Glass & Screen | - | - | - | - | - | - | - | - |
| 6549 | Electrical/Lights | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| 6550 | Signs | 1,500 | - | - | - | - | - | - | - |
| 6570 | Vehicle/Equip Repairs | - | - | - | - | - | - | - | - |
| 6580 | Towing | - | - | - | - | - | - | - | - |
| 6590 | Misc O/P & Maint Expense | - | - | - | - | - | - | - | - |
| | Total Maintenance Expense | 7,565 | 3,565 | 3,815 | 4,315 | 5,165 | 5,285 | 4,920 | 4,920 |

**Taxes & Insurance**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 6710 | Property Taxes | - | - | - | - | - | - | 23,678 | - |
| 6711 | Payroll Taxes | 550 | 550 | 619 | 674 | 777 | 777 | 777 | 777 |
| | Back Property Taxes | | | | | | | | |
| 6720 | Property Liab/Flood Ins | 1,375 | 1,375 | 1,375 | 1,375 | 1,375 | 1,375 | 1,375 | 1,375 |
| 6722 | Worker's Compensation | 218 | 218 | 238 | 253 | 283 | 283 | 283 | 283 |
| 6721 | Fidelity Bond | - | - | - | - | - | - | 50 | - |
| 6723 | Health Insurance | 495 | 495 | 495 | 495 | 495 | 495 | 495 | 495 |
| 6729 | Other Insurance | - | - | - | - | - | - | - | - |
| 6719 | Misc. Taxes/Licenses | 175 | 175 | 175 | 175 | 175 | 175 | 175 | 175 |
| | Total Taxes & Insurance | 2,813 | 2,813 | 2,901 | 2,972 | 3,105 | 3,105 | 26,833 | 3,105 |
| | Reserve | 2,913 | 2,913 | 2,913 | 2,913 | 2,913 | 2,913 | 2,913 | 2,913 |
| | **TOTAL EXP. BEFORE FINANCIAL** | 37,926 | 30,701 | 30,664 | 31,185 | 32,068 | 33,650 | 56,888 | 33,110 |
| | **NET Operating Income** | 32,011 | (14,854) | (6,543) | 4,836 | 14,908 | 22,331 | 2,908 | 30,576 |
| | **NET Operating Income** | 32,011 | (14,854) | (6,543) | 4,836 | 14,908 | 22,331 | 2,908 | 30,576 |

**Financial Expense**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 6828 | Debt Service - 1st TD P/I | | | | | | | | |
| | Debt Service - 2nd TD P/I | | | | | | | | |
| 6890 | Miscellaneous Fin Exp. | | | | | | | | |
| | Chapter 11 QTRLY FEE | | | 975 | | | 975 | | |
| | Convenience Class | | | | | | 2,556 | | |
| | Total Financial Expense | - | - | 975 | - | - | 3,531 | - | - |

**Less: Curr. Year Capital Additions**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | CONSTRUCTION: | | | | | | | | |
| | Interior Paint | | | | | | 280 | 420 | 290 |
| | Cabinets & Installation | | | | | | | | |
| | Tub/Shower Enclosures | | | | | | 1,235 | 1,853 | 1,260 |
| | Flooring | | | | | | | 10,340 | 15,516 |
| | Bath Cabinet / Mirror | | | | | | 780 | 1,170 | 380 |
| | Kitchen/Bath sinks & granite counters | | | | | | 5,000 | 7,500 | 5,305 |
| | Window Coverings | | | | | | 1,850 | 2,774 | 1,090 |
| | Plumbing fix & Install | | | | | | 1,110 | 1,665 | 1,110 |
| | Toilets | | | | | | | | 1,125 |
| | Kitchen Appliances & Install | | | | | | | 9,475 | 14,213 |
| | Misc. Window Repair | | | | | | 800 | 1,200 | 270 |
| | Ceiling retexture / drywall | | | | | | | | 400 |

| | | 2009 | 2009 | 2009 | 2009 | 2009 | 2009 | 2009 | 2010 |
|---|---|---:|---:|---:|---:|---:|---:|---:|---:|
| | (revised 5-19-09) | JUN | JUL | AUG | SEP | OCT | NOV | DEC | JAN |
| | Light fixtures & celing fan | | | | | | 1,504 | 2,256 | 1,140 |
| | Other (smoke detectors; misc) | | | | | | 115 | 173 | 90 |
| | Patio tiles, lower floor & upper epoxy | | | | | | 738 | 1,106 | 898 |
| | All doors hdwe & baseboards | | | | | | 3,702 | 5,554 | 3,572 |
| | Elec. Switches; plates, outlets, thermostats | | | | | | 320 | 480 | 280 |
| | Const. Mgmt Fee | | | | | | 1,280 | 1,920 | 720 |
| 1470 | Maintenance Equipment | | | | | | | | |
| 1486 | Floor covering Replacement | | | | | | | | |
| 1487 | Drapery Replacement | | | | | | | | |
| 1488 | Appliance Replacements | | | | | | | | |
| 1489 | HVAC Replacements | | | | | | | | |
| 1484 | Roof Replacements | | | | | | | | |
| 1430 | Building Improvements | | | | | | | | |
| 1490 | Misc. Fixed Assets | | | | | | | | |
| | Total Additions | - | - | - | - | - | 18,714 | 47,886 | 47,659 |
| | NET Cash AFTER Finance and CAPITAL Costs Prior to Contributions | 32,011 | (14,854) | (7,518) | 4,836 | 14,908 | 86 | (44,978) | (17,083) |
| | Capital Contributions Services Accounts 6517, 6537, 6538 & 6540. | 5,245 | 2,745 | 2,995 | 3,395 | 4,145 | 4,545 | 4,145 | 4,145 |
| | Capital Contributions CASH | | | | | | 161,000 | | |
| | Month End Cash Balance - Budget | 37,256 | 25,146 | 20,624 | 28,855 | 47,908 | 213,540 | 172,707 | 159,770 |
| | *Month End Cash Balance - Actual* | 41,891 | 27,367 | 47,236 | | | | | |

**MEADOWOOD VILLAGE**
**Dixon, California**
**LEASE UP BUDGET 2009-2012**

# EXHIBIT A

This budget is an estimate only and actual income and expenses are subject to change.

Income from Homeowner's Dues for monthly share of maintenance and service costs

Costs and Expenses are annualized and divided by 12.